**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:25-cv-22659-RKA**

NEIGHBORS AND NEIGHBORS
ASSOCIATION, INC., a Florida not for
profit corporation,

    *Plaintiff*,

v.

KEON HARDEMON, individually, and
MIAMI-DADE COUNTY, a political
subdivision of the State of Florida,

    *Defendants*.

_____

## DEFENDANTS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendants Miami-Dade County and Commissioner Keon Hardemon (collectively, "Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), move to dismiss the Complaint filed by Plaintiff Neighbors and Neighbors Association, Inc. ("Plaintiff" or "NANA").

To address an on-going affordable housing crisis, Miami-Dade County maintains an Infill Housing Initiative Program ("Infill Program") where the County agrees to provide developers with County-owned property at nominal cost and, in exchange, developers agree to construct affordable housing on the property within two years.  Under the County Code, when a developer fails to meet their promise to develop within the two-year timeline set forth in the Code and agreed to by contract, construction deadlines "may be extended at the sole direction of the Board of County Commissioners." MIAMI-DADE COUNTY CODE § 17-124(c).  This makes the grant of any extension a purely legislative—and therefore political—decision.

This case primarily centers on the status of thirty-five properties that were transferred by Miami-Dade County in 2016 and still remain undeveloped more than eight years later.  The gravamen of Plaintiff's Complaint (although couched in eight separate counts) is that Plaintiff has been retaliated against in violation of the First Amendment because Commissioner Hardemon— one member on a thirteen-member County Commission—declined to support a **_fourth_** extension of time on a development project Plaintiff has miserably failed to accomplish over the past eight

years, and which Plaintiff now concedes it never intended to complete within the required timeframe. Plaintiff's proposed solution to this purported retaliation is to ask this Court to meddle with a discretionary policy decision and force a legislative outcome.

Plaintiff's Complaint, however, is fundamentally flawed because it is based entirely on the legal rights and interests of third parties (i.e., someone else's property and speech) as well as on a self-inflicted and illusory political injury that is insufficient to give Plaintiff any standing to bring this lawsuit. Additionally, Plaintiff's claims are doomed because Commissioner Hardemon is entitled to absolute legislative immunity. The discretionary policy decision at the heart of this lawsuit is not the product of retaliation, but instead the fruit of his legislative judgment as to the best way to solve the affordable housing crisis in Miami-Dade County. Finally, Plaintiff cannot state any viable cause of action under federal or state law against Defendants. Accordingly, this Court should dismiss this lawsuit with prejudice because this entire case is not based on anything Commissioner Hardemon or the County did, but instead on Plaintiff's own failure to avail itself of all possible avenues to obtain its desired political goal.

## MEMORANDUM OF LAW

### BACKGROUND

On June 12, 2025, Plaintiff, a nonprofit organization, filed the instant Complaint against Commissioner Hardemon and the County. *See* Compl. ¶ 2. Plaintiff's lawsuit stems from what it claims was Commissioner Hardemon's legislative decision, as the elected representative of District 3 of Miami-Dade County, to "refuse to enable a vote on an extension" of time to comply with the requirements of the Infill Program. *See id.* ¶ 4. According to the Complaint, Plaintiff participates in the Infill Program, which "aims to facilitate development of affordable housing … and to revitalize communities by eliminating vacant or deteriorated properties" in order to "address the affordable housing crisis" in the County. *Id.* ¶ 15.

Under the Infill Program, the County "transfers surplus County-owned parcels to both for-profit and nonprofit developers at nominal cost, with the goal of constructing single-family homes and multi-family rentals units for low-and-middle-income residents." *Id.* ¶ 16. Developers in the Infill Program receive the "property from the County subject to several conditions and deed restrictions." *Id.* ¶ 17. For instance, the Infill Program requires the developers receiving County-owned property "to construct affordable units that adhere to price caps and to meet specific architectural and size standards[.]" *Id.* Additionally, developers "must obtain a certificate of occupancy within a designated period[.]" *Id.* Per the Complaint, the designated period is "two

years from the property conveyance date for single-family homes and five years for multifamily developments." *Id.* "If a developer fails to meet the Program requirements or does not secure a certificate of occupancy within the specified timeframe, the County has the right to reclaim the property and return it to its inventory." *Id.* ¶ 18.

In 2016, a joint venture between Plaintiff and CRC Leadership, Inc. ("CRC") was awarded thirty-five properties under the Infill Program by the Miami-Dade Board of County Commissioners "pursuant to County Resolutions Nos. R-958-16 and R-556-17." *Id.* ¶ 22.[1] Specifically, the joint venture that was awarded the properties was "NANA and CRC Affordable Housing LLC[.]" Ex. A at 4. Out of the thirty-five County-owned lots, which were all located in District 3, "twenty-eight were zoned for the construction of single-family or duplex homes, while seven were zoned for multifamily development and slated for the construction of seventy-unit residential complexes." Compl. ¶ 25. And, according to the Complaint, the deeds to these County-owned lots "were granted subject to the standard Program condition that construction be completed within two years for the single-family and duplex lots or five years for the multifamily projects." *Id.* ¶ 26. Thus, Plaintiff had until 2018 to complete construction on the single-family and duplex lots and until 2021 to complete construction on the multi-family projects.

Based on the allegations in the Complaint, Plaintiff did not complete construction within the required timeframe under the Infill Program. *See id.* ¶ 27. In the eight years that have passed since Plaintiff received the thirty-five lots in 2016, Plaintiff admits it has only completed construction of four single-family lots. *See id.* ¶ 31. Plaintiff has also not obtained permits or commenced construction on any of the seven multifamily lots. *See id.* ¶ 32. Thus, Plaintiff ultimately "received a Notice of Default[2] from the County's Office of Community and Housing Development," which stated that "NANA's Program lots were in default due to the failure to

---

[1] County Resolutions Nos. R-958-16 and R-556-17 are attached herein as Exhibits A and B and should be considered as part of Plaintiff's pleading because they are referenced in the Complaint and central to Plaintiff's claims. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

[2] The County's Notice of Default is attached herein as Exhibit C and should be considered as part of Plaintiff's pleading because it is referenced in the Complaint and central to Plaintiff's claims. *See Brooks,* 116 F.3d at 1369.

obtain certificate of occupancy." *Id.* ¶ 59. According to the Complaint, the Notice of Default "warned that unless the default was cured within 30 days," the County could "exercise its option to revert the thirty properties listed on Exhibit A." *Id.* Plaintiff did not cure the default within the 30-day cure period. *See id.*

The County's issuance of the Notice of Default following Plaintiff's failure to meets its obligations under the Infill Program over the past eight years, however, was not due to the County's lack of patience. As described in the County's Notice of Default, Plaintiff previously received **three** extensions of time to comply with the requirements of the Infill Program. *See* Ex. C at 2. First, on May 5, 2020, the Board of County Commissioners adopted Resolution No. R-394-20, which authorized a two-year extension of time. *See id.* at n.2; Ex. D at 4. Then, on December 6, 2022, the Board of County Commissioners approved Resolution No. R-1170-22, which provided another extension of time. *See* Ex. C at 2 n.1; Ex. E at 15–16. Finally, on May 2, 2023, the Board of County Commissioners approved Resolution No. R-432-23, which provided yet another extension of time. *See id.*; Ex. F at 4–6.[3] Notably, Commissioner Hardemon himself sponsored the extensions provided in December 2022 and May 2023. *See* Ex. E at 20; Ex. F at 8.

Indeed, the Complaint concedes that the Board of County Commissioners has issued "multiple extensions for NANA's pending projects under the Program." Compl. ¶ 28. "The most recent extensions granted to NANA were scheduled to expire on January 31, 2024." *Id.* ¶ 37. According to the Complaint, at the end of 2023, "NANA staff worked collaboratively with Commissioner Hardemon's office to draft an extension resolution to be submitted to the Commission[.]" *Id.* ¶ 39. Commissioner Hardemon, however, ultimately declined to sponsor a fourth extension of time.

The Complaint claims that Commissioner Hardemon's refusal to sponsor a legislative item before the Board of County Commissioners granting Plaintiff its fourth requested extension of time to comply with the requirements of the Infill Program constitutes unlawful retaliation. *See*

---

[3] The Court should take judicial notice of the County Resolutions discussed in the Notice of Default (Ex. C), which authorized the conveyance of the properties—Nos. R-958-16 (Ex. A) and R-556-17 (Ex. B)—and granted previous extensions of time—Nos. R-394-20 (Ex. D), R-1170-22 (Ex. E), and R-432-23 (Ex. F)—under Federal Rule of Evidence 201 because those records "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. Public records are among the permissible facts that a district court may consider.") (citations omitted).

*id.* ¶ 68. Plaintiff's theory of retaliation is based on two alleged acts—(1) providing support for one of Commissioner Hardemon's alleged political rivals and (2) speaking out against Commissioner Hardemon's management of discretionary funding. *See id.* ¶¶ 41–58. The Complaint does not allege any other separate actions by the County.

Based on these allegations, the Complaint asserts eight causes of action against Commissioner Hardemon and the County under 42 U.S.C. § 1983 and state law. Specifically, the Complaint includes a First Amendment retaliation claim (Count I) and a Fourteenth Amendment equal protection class of one violation claim (Count IV) against Commissioner Hardemon in his individual capacity. *See* Compl. ¶¶ 71–78, 91–98. Additionally, the Complaint includes state law claims for promissory estoppel (Count VII), and alternatively, breach of contract (Count VIII) against Commissioner Hardemon in his official capacity. *See id.* ¶¶ 118–123, 124–131. With respect to the County, the Complaint asserts two *Monell* claims for First Amendment retaliation (Count II) and Fourteenth Amendment class of one equal protection violation (Count V). *See id.* ¶¶ 79–83, 99–105. The Complaint also asserts a fourteenth amendment procedural due process violation claim against the County (Count III). *See id.* ¶¶ 84–90. Finally, the Complaint asserts a claim for "injunctive relief" (Count VI) against both Commissioner Hardemon and the County. *See id.* ¶¶ 106–117.

## STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ibid.*

## ARGUMENT

### I.    Plaintiff Lacks Standing to Sue Defendants

As an initial matter, the Complaint should be dismissed because Plaintiff lacks standing to sue Commissioner Hardemon and the County. To establish the "irreducible constitutional

minimum" of standing, the plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation marks omitted). Apart from this minimum constitutional requirement, the Supreme Court "has fashioned three principles of judicial restraint, which have come to be known as 'prudential' considerations." *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). The Complaint here fails to meet each element of the constitutional standing analysis as well as courts' self-imposed prudential considerations.

### A.  *Plaintiff Has Not Suffered an Injury in Fact*

The Complaint fails to allege that Plaintiff suffered any injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339. The crux of Plaintiff's injury, as alleged in the Complaint, is that Commissioner Hardemon declined to sponsor a resolution before the Board of County Commissioners that would have, once again, extended the deadline for Plaintiff to comply with the requirements of the Infill Program. *See* Compl. ¶¶ 4, 65. In support of that alleged injury, the Complaint conclusorily alleges that Plaintiff suffered lost financing and increased costs related to the properties it received under the Infill Program. *See id.* ¶¶ 4, 70.

Those allegations, however, are insufficient to plead a concrete injury in fact. Because the Complaint here only alleges that one County commissioner (i.e., Commissioner Hardemon) declined to support Plaintiff's request for a fourth extension of time, Plaintiff has failed to allege that it was harmed in any specific, objective manner. Plaintiff's theory assumes that the thirteen-member Board of County Commissioners would have granted a fourth extension of time after Plaintiff had failed to develop the properties over the past eight years. That is precisely the type of conjectural and hypothetical injury that is insufficient to meet Article III of the Constitution. In other words, Plaintiff's injury only transcends from the speculative realm and becomes concrete and particularized when (and if) the Board were to deny Plaintiff's extension of time, which has not yet occurred. *See id.* ¶ 27 ("[A]ny extension of a lot's development timeline must be approved by a vote of the full Commission."); *see also* MIAMI-DADE COUNTY CODE § 17-124(c) (stating that construction deadlines "may be extended at the sole direction of the Board of County Commissioners."). In any event, the alleged lost financing and increased maintenance costs that Plaintiff allegedly suffered are devoid of any factual support because the Complaint does not

include any specifics about the source or terms of the lost financing or increased costs.  As such, the Complaint fails to allege an injury in fact.

### B.      Plaintiff's Alleged Injuries Are Not Traceable to Defendants

The allegations of the harm suffered by Plaintiff are also not fairly traceable to Defendants. "[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).  Plaintiff's alleged theory of causation is fundamentally flawed. According to the Complaint, Commissioner Hardemon, as the Commissioner of District 3, is claimed to "ha[ve] sole control over whether any further extensions of the development timetable for NANA's thirty Program lots would be put to a vote before the full Commission."  Compl. ¶ 33; *see id.* ¶ 34.  However, the Complaint does not cite to any rule of procedure, ordinance, or statute supporting this artificial requirement, thus making this allegation nothing more than quintessential legal conclusions that should be disregarded.  *See Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) ("In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but legal conclusions without adequate factual support are entitled to no assumption of truth." (cleaned up)).

The fact that Plaintiff was successful in obtaining the District 3 Commissioner's sponsorship of its requested extension in the past does not mean that Plaintiff was precluded from asking any of the other twelve commissioners to sponsor its desired resolution this time. Nevertheless, even if Commissioner Hardemon (or any other Commissioner) would have supported and sponsored the resolution granting Plaintiff an additional extension of time, the Complaint itself recognizes that such sponsorship would have only been a "first step to obtaining an extension on the development timeline."  Compl. ¶ 40.  In other words, irrespective of Commissioner Hardemon's actions, Plaintiff's request for an extension of time was not guaranteed to be placed on an agenda before the Board of County Commissioners (much less pass favorably, given that this was not Plaintiff's first extension of time).  *See* MIAMI-DADE COUNTY CODE § 2-1, Rule 401(f) (stating that only the Chairperson of the Board of County Commissioners has the authority to "place items on the appropriate commission agenda").  Plaintiff's inability to obtain a fourth extension of time, as alleged in the Complaint, therefore, was not a result of any failure by Commissioner Hardemon or the County, but rather the product of its own erroneous belief that

it was entitled to a political outcome. *See Wasser v. All Mkt., Inc.*, 329 F.R.D. 464, 470–71 (S.D. Fla. 2018) ("[A] controversy is not justiciable when a plaintiff independently caused his own injury.") (quoting *Swann v. Sec'y, Georgia*, 668 F.3d 1285, 1288 (11th Cir. 2012)). Accordingly, Plaintiff has failed to allege any injury fairly traceable to Defendants.

### C.      *Plaintiff's Alleged Injuries Are Not Redressable*

Even if Plaintiff could meet both the injury and causation requirements for standing, it cannot meet the redressability requirement. To establish redressability, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S. at 561 (quotation omitted). Here, the Complaint seeks injunctive and declaratory relief, as well as compensatory damages. *See* Compl. ¶ 5. Although the Complaint alleges that Plaintiff is entitled to preliminary and permanent injunctive relief against Defendants, the Complaint does not specify what declaration or injunction Plaintiff seeks. *Id.* ¶ 114. This overly broad and ambiguous request for relief alone constitutes grounds for dismissal. *See Stevens v. Osuna*, 877 F.3d 1293, 1312 (11th Cir. 2017) (affirming dismissal and noting that "a plaintiff's failure to state definitely and consistently the declaratory relief sought is in itself a sufficient basis to deny such discretionary relief as a declaratory judgment"). Additionally, it is unlikely that the Court will be able to address Plaintiff's alleged injury because Plaintiff's desired relief is to force a political outcome. Even if a resolution granting Plaintiff's extension was brought before the Board of County Commissioners, whether sponsored by Commissioner Hardemon or another Commissioner, the Court cannot force the remaining elected commissioners to vote in favor of that resolution. And, without a favorable legislative vote, Plaintiff would remain in its current position. *See DiMaio v. Democratic Nat'l Comm.,* 520 F.3d 1299, 1303 (11th Cir. 2008) (explaining a plaintiff lacked standing where the complaint did not "suggest in any way how [the] 'injury' could be redressed by a favorable judgment"); *see also Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996) (explaining that courts do not countenance injunctions that merely require someone to "obey the law.").

### D.      *Prudential Considerations Warrant Dismissal*

In addition to failing to allege the threshold constitutional requirements of standing, the Complaint should be dismissed based on prudential principles, which ensure that courts do not resolve abstract questions better left to other branches of government. *See Harris*, 20 F.3d at 1121. The prudential considerations include (1) whether the plaintiff's claims are within the zone of interests protected by the statute or constitutional provision at issue; (2) whether the complaint

raises abstract questions that are essentially generalized grievances; and (3) whether the plaintiff is asserting his own rights and not the legal rights and interests of a third party. *See id.* Here, the Complaint should be dismissed on prudential standing considerations because it simply raises a generalized grievance more appropriately addressed by the political process rather than the courts and Plaintiff's claims are based entirely on the legal rights and interests of third parties.

*First*, this entire lawsuit is predicated on a generalized grievance by a constituent against its elected commissioner. The allegations in the Complaint make it abundantly clear that this lawsuit springs from Commissioner Hardemon's discretionary policy decision. *See* Compl. ¶ 69 (expressing Plaintiff's intent to hold Commissioner Hardemon "accountable at the ballot box"), ¶ 37 (describing Commissioner Hardemon's policy preference regarding the multifamily-zoned lots that had remained undeveloped by Plaintiff), ¶ 38 (describing Commissioner Hardemon's policy decision regarding the return of the multifamily lots after an alleged lack of public support). The Court should decline to provide the political remedy Plaintiff is seeking and reject Plaintiff's invitation to weigh-in on a generalized grievance that is more appropriately resolved by the legislative branch and the political process. *See Fraternal Ord. of Police Hobart Lodge No. 121, Inc. v. City of Hobart*, 864 F.2d 551, 557 (7th Cir. 1988) ("The behavior charged in the complaint may be unedifying (though that depends on one's theory of the political process), but we do not see how the federal courts could remedy it without exceeding reasonable bounds on federal judicial intervention in the characteristic operations of the political process. We are not the city council of Hobart.").

*Second*, the allegations in the Complaint make clear that Plaintiff is not asserting its own legal rights and interests. "In general, a litigant may only assert his own rights, not the rights of a third party." *AIDS Healthcare Found., Inc. v. Agwunobi*, No. 07-60853-CIV, 2007 WL 9701698, at *6 (S.D. Fla. Oct. 17, 2007). Here, the owner of the thirty-five properties at the center of this lawsuit and the root of any alleged injury suffered by Plaintiff is not a party to this lawsuit. According to the Complaint, County Resolutions Nos. R-958-16 and R-556-17 conveyed the thirty-five properties not to Plaintiff but to "NANA & CRC Affordable Housing, LLC," which was a joint venture between Plaintiff and CRC to develop the properties. *See* Exhibit A at 2; *see also* Compl. ¶ 22. Additionally, the Complaint is devoid of any allegations that Plaintiff supported, associated with, or endorsed Commissioner Hardemon's political rival. Instead, it only references the speech of third parties. *See* Compl. ¶ 43 (describing alleged political speech by Plaintiff's Executive Director, Leroy Jones), ¶ 47 (describing alleged political speech by Lyle Muhammad,

Executive Director of the Circle of Brotherhood).  Critically, the Complaint does not allege that either Mr. Jones or Mr. Muhammad, who are not parties to this lawsuit, made any statements on behalf of Plaintiff.  Nor does the Complaint allege that any of Plaintiff's members made any comments or statements when they attended the January 22, 2025 Board of County Commissioners' meeting.  *See id.* ¶ 45.  The Complaint's silence regarding any political speech or activity by Plaintiff itself is a fatal deficiency for standing purposes.  *See L.S. by Hernandez v. Peterson*, No. 18-CV-61577, 2018 WL 6573124, at *5 (S.D. Fla. Dec. 13, 2018) (holding that plaintiffs lacked standing to assert a first amendment retaliation claim because the complaint contained no allegations of any speech or act in which the plaintiffs themselves engaged or participated).

## II.     Plaintiff's Claims Against Commissioner Hardemon Should be Dismissed

### A.     *Commissioner Hardemon is Protected by Absolute Legislative Immunity*

Even if Plaintiff had standing to bring this lawsuit, all the claims against Commissioner Hardemon fail as a matter of law because local legislators are entitled to absolute immunity from civil liability for their legislative activities.  *See Woods v. Gamel*, 132 F.3d 1417, 1419 (11th Cir. 1998) ("[C]ounty commissioners can be entitled to legislative immunity when acting in their legislative capacities.").

This entire lawsuit, and certainly the claims against Commissioner Hardemon, are based principally on two acts by Commissioner Hardemon—(1) refusing to sponsor a resolution for an extension of time before the Board of County Commissioners and (2) moving during the January 22, 2025 County Commission meeting to place a temporary hold on future payments to both NANA and Circle of Brotherhood pending an administrative review.  *See* Compl. ¶¶ 73, 61, 65, 49.  Both of these alleged wrongful actions, however, fall squarely within Commissioner Hardemon's legislative role and his sphere of legislative activity as a sitting and duly elected county commissioner.  "An act is deemed legislative, rather than administrative or managerial, when it is policymaking and of general application."  *Woods*, 132 F.3d at 1420.  Commissioner Hardemon's comments, motion, and vote at the January 22, 2025, meeting were purely legislative acts taken during the legislative process.  *See id.* ("Voting, debate and reacting to public opinion are manifestly in furtherance of legislative duties.") (alternation omitted) (quoting *DeSisto College, Inc. v. Line*, 888 F.2d 755, 765 (11th Cir. 1989)).

Even Commissioner Hardemon's decision to decline to sponsor Plaintiff's requested resolution to extend the development deadline falls within the sphere of legislative activity.  *See*

*Mathis v. City of Lakeland*, No. 8:21-CV-235-SDM-SPF, 2021 WL 11644468, at *9 (M.D. Fla. Aug. 2, 2021) ("But by choosing inaction, the Commissioners were operating within 'the sphere of legislative activity' and enjoy absolute legislative immunity from Plaintiff's claims."), *report and recommendation adopted sub nom. Mathis v. Lakeland*, No. 8:21-CV-235-SDM-SPF, 2021 WL 11644473 (M.D. Fla. Aug. 17, 2021).   The Complaint's threadbare allegation that the actions by Commissioner Hardemon were administrative in nature and not aimed at the general public does not move the needle because they are devoid of any factual support.  *See* Compl. ¶ 74.  On the contrary, the overwhelming factual allegations in the Complaint demonstrate that Commissioner Hardemon's decisions regarding the Infill Program are legislative policy decisions relating to the "severe housing crisis" affecting Miami-Dade County.  *Id.* ¶ 13.

Although the Complaint alleges that Commissioner Hardemon withdrew his support and refused to sponsor the resolution extending the development deadline with the intent of political retribution, he is nevertheless entitled to absolute immunity.  The Supreme Court has explained that local legislators are entitled to absolute immunity in connection with their legislative activity regardless of any ill motive or intent.  *See Bogan*, 523 U.S. at 45 ("Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.") (cleaned up); *see also Woods*, 132 F.3d at 1420 ("Even if the commissioners acted out of evil intent, the legislative nature of the act still controls."); *Ellis v. Coffee Cnty. Bd. of Registrars*, 981 F.2d 1185, 1191–92 (11th Cir. 1993) ("Because we find that the individual commissioners objectively were engaged in their legislative function in all of their actions relating to the Ellises' removal from the Coffee County voting list and because any subjective motivations are irrelevant to absolute legislative immunity, we conclude the individual Coffee County Commissioners are entitled to legislative immunity."); *Beach Blitz Co. v. City of Miami Beach, Fla.*, No. 1:17-CV-23958-UU, 2018 WL 11260453, at *4 (S.D. Fla. Feb. 5, 2018) ("While Plaintiff asserts that the individual Defendants passed the ordinances as a means of targeting Plaintiff or all of the MXE district package stores, the individual Defendants are entitled to absolute immunity in connection with their legislative activity regardless of any purported ill motive or intent.").   Accordingly, all claims against Commissioner Hardemon (Counts I, IV, VI, VII, and VIII), irrespective of whether they are filed

in his individual or official capacity, or whether they are asserted under federal or state law, should be dismissed.[4]

**B.      The Complaint Fails to State a Claim Against Commissioner Hardemon**

Notwithstanding Commissioner Hardemon's absolute legislative immunity, the Complaint also fails to state any cause of action against him.  As explained in more detail below, the Court should dismiss all claims against Commissioner Hardemon.

**i.   First Amendment Retaliation (Count I)**

The Complaint fails to state a cause of action against Commissioner Hardemon for First Amendment retaliation.  "To state a viable claim for First Amendment retaliation, a plaintiff must allege (1) that he engaged in speech or [an] activity protected by the First Amendment, (2) an adverse action, and (3) a causal connection between the protected speech or activity and the adverse action."  *Tundidor v. Hernandez,* No. 23-CV-22747, 2024 WL 4678925, at *10 (S.D. Fla. Nov. 5, 2024) (Altman, J.) (cleaned up).  Here, the Complaint fails to establish all of the essential elements of a First Amendment retaliation claim.

*First*, the Complaint fails to allege that Plaintiff engaged in any speech or an activity protected by the First Amendment because there is no single allegation in the Complaint that Plaintiff endorsed, supported, and promoted Commissioner Hardemon's alleged political opponent or engaged in any political speech.  *See* Compl. ¶¶ 38, 43, 60, 62, 67.  Indeed, as a "501(c)(3) not-for-profit Florida corporation," Ex. A at 1, Plaintiff is absolutely prohibited from directly or indirectly participating in, or intervening in, any political campaign or behalf of or in opposition to any candidate for elective public office, *see* 26 U.S.C.A. § 501(c)(3).  *See Zagfly, Inc. v. Comm'r*, 105 T.C.M. (CCH) 1214 (T.C. 2013) (explaining that to qualify as an exempt organization under section 501(c)(3), a corporation generally must demonstrate *inter alia* that "*no part of its activities constitutes intervention or participation in any political campaign on behalf of any candidate for public office*" and "*no substantial part of its activities consists of political or lobbying activities*") (emphases added).  Thus, the Complaint simply relies on the speech of third-parties, but fails to allege that any third parties engaged in any of these alleged protected activities on Plaintiff's behalf or as Plaintiff's representative.  *See* Compl. ¶¶ 45, 47.

---

[4]  *See Scott v. Taylor*, 405 F.3d 1251, 1257 (11th Cir. 2005) ("Because Appellants are state legislators who acted in their legislative capacities, they are entitled to absolute legislative immunity. This is true regardless of whether a suit seeks damages or prospective relief and regardless of whether the state legislators are named in their individual or official capacity.").

To the extent Plaintiff alleges that the remarks by Mr. Muhammad constitute first amendment protected speech, that theory fails because the Complaint established that Mr. Muhammad made a threat of violence against Commissioner Hardemon.  "'True threats' of violence is another historically unprotected category of communications." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)).  "True threats are serious expressions conveying that a speaker means to commit an act of unlawful violence."  *Id.* (cleaned up).  "Whether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat…  The existence of a threat depends not on 'the mental state of the author,' but on 'what the statement conveys' to the person on the other end."  *Id.*  According to the Complaint, Mr. Muhammad stated in his remarks, "I'm sending out a warning to Commissioner Keon Hardemon in reference to Leroy Jones."  Compl. ¶ 47.  This statement, according to the Complaint, was understood by Commissioner Hardemon and other commissioners at the dais as a threat.  *See* Compl. ¶¶ 49, 52.  Therefore, although the Complaint tries to later characterize Mr. Muhammad's comment against Commissioner Hardemon as mere criticism, those threatening remarks cannot serve as protected speech, even if Mr. Muhammad made those statements on Plaintiff's behalf.

*Second*, the Complaint fails to allege that Plaintiff suffered an adverse action.  "As to the second element, an official's conduct adversely affects the protected speech if it would likely deter a person of ordinary firmness from the exercise of First Amendment rights."  *Tundidor*, 2024 WL 4678925, at *11 (cleaned up).  Here, the allegations in the Complaint establish that this case is based on an alleged broken political commitment or promise, not the type of harassment that is often seen in First Amendment retaliation cases.  *See* Comp. ¶¶ 40, 50, 62, 72.  Even viewing the allegations in the Complaint in the light most favorable to Plaintiff, Commissioner Hardemon's alleged broken political promise does not rise to the level of First Amendment retaliation.  *See Coker v. Warren*, 660 F. Supp. 3d 1308, 1332 (M.D. Fla. 2023) ("Notably, the Court questions whether the City Defendants' mere inaction in failing to enforce the decorum policy is sufficient to support a claim for First Amendment retaliation."); *see also L.H. v. Pittston Area Sch. Dist.*, 666 F. App'x 213, 216 (3d Cir. 2016) ("[A]llegations of inaction are not sufficient to establish an actionable claim for retaliation.").  Any supporter of a losing political opponent cannot reasonably claim to be deterred from exercising First Amendment rights anytime a local elected official fails to give them the political outcome they desire.  To hold otherwise would award disgruntled constituents *carte blanche* to use the First Amendment to hold elected representatives politically

hostage.  As Judge Posner astutely observed, "[W]ho can be surprised that legislators reward their supporters and mulct their opponents? What else is new?"  *City of Hobart*, 864 F.2d at 554.

*Finally*, the Complaint lacks any causal connection between the alleged protected speech or activity and the adverse action.  "In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech."  *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011).  Here, there is no causal connection between Plaintiff's alleged protected activity—supporting Commissioner Hardemon's opponent and criticizing him—and the adverse action—Plaintiff not obtaining the extension it desired.  On the contrary, Plaintiff failed to get the resolution granting its desired extension before the Board of County Commissioners due to its own political complacency.  Although the Complaint alleges that Commissioner Hardemon, as the District 3 Commissioner, had "sole control" and was the only person with the "authority to place matters related to those lots on the County Commission's agenda for official action," that incorrect legal conclusion should be disregarded.  *See* Compl. ¶¶ 33–34.  Under the Board of County Commissioners' Rules of Procedures, the district commissioner is only required to sponsor resolutions relating to "naming, renaming or codesignation of Miami-Dade County roads, facilities or property" in his or her district.  MIAMI-DADE COUNTY CODE § 2-1, Rule 9.02(a).  Therefore, any County commissioner, the County Mayor, or even a committee of the County Commission could have sponsored Plaintiff's requested resolution.  *See id.*, Rules 5.05(b)(1), 5.06(a), 5.06(c).[5] Significantly, the Miami-Dade County Code expressly states that the discretion to award an extension for the Infill Program rests with the Board of County Commissioners, not any individual commissioner.  *See id.* § 17-124(c) (stating that the "*two-year period for development may be extended at the sole direction of the Board of County Commissioners upon written application by a qualified developer*") (emphasis added).  Thus, even if Commissioner Hardemon had agreed to sponsor Plaintiff's requested legislative extension, that would have been only the "first step" in a long chain of causation.  Compl. ¶ 40.  Given that Commissioner Hardemon could have only played a limited

---

[5]  Aside from looking to the Board's Rules of Procedure, Plaintiff should be well aware that these requests are not required to be sponsored by the district commissioner based on its own experience.  One of its prior extension requests was in fact sponsored by the Housing, Social Services & Economic Development Committee rather than any individual commissioner.  *See* County Resolution No. R-394-20 (Ex. D).  Furthermore, although the Board's Rules allow commissioners to request first priority to prepare legislation on certain items, there are no allegations in the Complaint to suggest that rule is implicated here.

role in the multi-step process of awarding Plaintiff's desired extension of time, it is not plausible that Plaintiff's failure to obtain an extension was attributable solely to his decision not to sponsor such item.

### ii.  Equal Protection (Count IV)

The Complaint also fails to state a cause of action against Commissioner Hardemon for a "class of one" equal protection violation. *See* Compl. ¶¶ 91–98 (Count IV). To state a class-of-one claim, a plaintiff must allege that (1) "[it] has been intentionally treated differently from others similarly situated," and (2) "there is no rational basis for the difference in treatment." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1201 (11th Cir. 2007) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Importantly, "[c]lass of one equal protection claims generally require plaintiffs to identify comparators in the pleading in order to show intentional, discriminatory treatment different from others similarly situated." *Rebalko v. City of Coral Springs*, No. 19-60569-CIV, 2020 WL 6446042, at *20 (S.D. Fla. Nov. 3, 2020) (Altman, J.).

Here, the Complaint fails to identify any similarly situated comparators. The Complaint alleges that NANA is similarly situated to "other property developers who have been deeded land by Miami-Dade County" and "other non-profit organizations." Compl. ¶¶ 92, 95. Unfortunately for Plaintiff, those two general references to broad categories of comparators—other developers and non-profit organizations—is not sufficiently particularized to state a claim. *See Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1275 (11th Cir. 2008) (granting judgment on the pleadings as to a "class of one" claim because the plaintiff "did not sufficiently particularize a similarly situated comparator"). Indeed, the Eleventh Circuit has explained that the comparator requirement is strictly applied. *See Jordan v. Sec'y, Fla. Dep't of Children & Family Servs.*, 723 F. App'x 690, 693 (11th Cir. 2018) ("To be similarly situated, the comparators must be prima facie identical in all relevant respects.") (citing *Grider v. City of Auburn*, 618 F.3d 1240, 1264 (11th Cir. 2010)). The Complaint is devoid of any allegations regarding any entity which obtained a fourth extension of time after only developing four out of thirty-five properties received under the Infill Program in an eight-year time period. Plaintiff here is not seeking equal treatment, but special treatment. Thus, the Complaint's generalized references to other developers and non-profit organizations violates the cardinal rule of alleging "more than broad generalities in identifying a comparator." *Id.* As such, Plaintiff's equal protection claim against Commissioner Hardemon (Count IV) should be dismissed for failure to identify a comparator. *See Griffin Indus.*, 496 F.3d at 1208 (dismissing a "class of one" claim because the plaintiff's "own complaint shows that it was not similarly situated

to its purported comparator"); *Rebalko*, 2020 WL 6446042, at \*22–23 (dismissing complaint because plaintiffs failed to allege a class of one claim in part because they did not identify "even a *single* comparator who received more favorable treatment.") (emphasis in original).

### iii.   Injunctive Relief (Count VI)

Count VI purports to state a cause of action for injunctive relief under § 1983 against Commissioner Hardemon and the County. *See* Compl. ¶ 106–117. "Injunctive relief, however, is a remedy, not a separate cause of action." *Exum v. Nat'l Tire & Battery*, 437 F. Supp. 3d 1141, 1158–59 (S.D. Fla. 2020). Thus, Count VI must be dismissed. *See Rubinstein v. Keshet Inter Vivos Trust*, No. 17-61019, 2018 WL 3730875, at \*7 (S.D. Fla. June 11, 2018) (noting that "there are an abundance of cases establishing that injunctive relief 'is a remedy, not a separate cause of action'").

### iv.   Promissory Estoppel and Breach of Contract (Counts VII, VIII)

The Complaint fails to state a cause of action against Commissioner Hardemon for promissory estoppel or breach of contract in his official capacity. It is well established that when a government official such as Commissioner Hardemon is sued in his "official capacity," "the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'" *Donovan v. Rivadeneira*, 557 F. Supp. 3d 1236, 1246 (S.D. Fla. 2021) (quoting *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991)). "Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents." *Id.* Here, because Plaintiff is suing Commissioner Hardemon in his official capacity, "Miami-Dade County, is the real party in interest." *Id.* (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

Plaintiff's claims for promissory estoppel and breach of contract against the County, however, fail. As an initial matter, the Complaint purports to state a claim for promissory estoppel, and "in the alternative" a breach of contract claim. *See* Compl. at 25–26. Although breach of contract and promissory estoppel claims "are alternatives to each other," Plaintiff mixes the order and puts the cart before the horse. *Doe v. Univision Television Grp., Inc.*, 717 So. 2d 63, 65 (Fla. 3d DCA 1998). "The doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice." *Id.* Importantly, when a complaint alleges the existence of an "express agreement," Plaintiff's claim for promissory estoppel fails. *See Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 385 F. Supp. 3d 1289, 1293 (S.D. Fla. 2019) ("While alternative claims are permissible, Defendant is correct that 'a complaint cannot allege an express agreement in a claim for unjust enrichment or promissory estoppel.'"). Here, there is no doubt that the Complaint alleges the existence of an express

agreement. *See* Compl. ¶¶ 4, 125. Therefore, Plaintiff's claim for promissory estoppel fails. *See Advanced Mktg. Sys. Corp. v. ZK Yacht Sales*, 830 So. 2d 924, 928 (Fla. 4th DCA 2002) ("Promissory estoppel is unavailable in this case because a written contract between the parties covered the sale of the yacht and the commissions due to the broker.").

Additionally, Plaintiff's claim for breach of contract fails because any purported agreement made by Commissioner Hardemon on behalf of the County is void and unenforceable. The Complaint makes clear that this case is about a campaign promise or a "political commitment." *See* Compl. ¶¶ 40, 50, 62, 72, 119. Such campaign promises are not made with the intent of entering into a contract but are simply "indispensable to decision making in a democracy[.]" *Brown v. Hartlage*, 456 U.S. 45, 55 (1982). Also, political statements made during election campaigns are not enforceable promises. *See St. John's United Church of Christ v. F.A.A.*, 550 F.3d 1168, 1170 (D.C. Cir. 2008) (noting that political promises have "no legal force whatsoever"); *Hardt v. City of Portland*, No. 3:23-CV-01980-AN, 2024 WL 1286542, at *5 (D. Or. Mar. 26, 2024) ("Plaintiffs provide no legal authority for the proposition that political statements made during election campaigns constitute enforceable promises; indeed, courts have long held that such statements are not enforceable promises under similar theories.").[6]

### III. Plaintiff's Claims Against the County Should be Dismissed

#### A. The Complaint Fails to State a Monell Claim Against the County (Counts II and V)

The Complaint fails to state a *Monell* claim against the County. It is well-settled that "a local government may only be held liable under Section 1983 if action pursuant to official policy of some nature caused a constitutional tort[.]" *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002) (cleaned up). "And, only those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability." *Id.* (cleaned up); *see also*

---

[6] Even if such political promise or commitment could be actionable, Commissioner Hardemon did not have the authority to bind the County. It is blackletter law that individuals or entities who contract with the government are "presumed to know the law." *Armco Drainage & Metal Prods., Inc. v. Pinellas Cnty.*, 137 So. 2d 234, 236 (Fla. 2d DCA 1962). Under Miami-Dade County's Home Rule Charter, only the Board of County Commissioners has the authority to enter into contracts on behalf of the County. *See* § 1.01(A) ("The Board of County Commissioners shall be the legislative and the governing body of the county."), § 5.03(D) ("The transaction shall be evidenced by written contract submitted and approved by the Board."). There are no allegations in the Complaint that the Board of County Commissioners entered into any agreement with Plaintiff or delegated any authority to Commissioner Hardemon on its behalf. Therefore, Plaintiff's claim for breach of contract fails for this reason as well.

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  "Where a policymaker is a public body consisting of multiple board members, a majority of the members of the council constitutes a final policymaker for purposes of creating *Monell* liability."  *O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1372 (S.D. Fla. 2016) (cleaned up).

Here, the Complaint asserts two *Monell* claims against the County—one for First Amendment retaliation (Count II) and another for a class of one equal protection violation (Count V).  *See* Compl. ¶¶ 79–83, ¶¶ 99–105.  Significantly, Plaintiff's theory of *Monell* liability against the County is doomed because it does not rest on any county policy or custom.  *See Donovan v. Rivadeneira*, 557 F. Supp. 3d 1236, 1246 (S.D. Fla. 2021) ("Here, Plaintiffs fail to allege that the claimed constitutional violations resulted from any policy or custom, and they therefore fail to state plausible claims for municipal liability under section 1983.").  Instead, Plaintiff's theory of *Monell* liability against the County is that the alleged retaliatory acts were carried out by Commissioner Hardemon as the "chief policymaker."  *Id.* ¶¶ 80, 83, 100, 104.  However, the Complaint's *Monell* claims against the County fail because Commissioner Hardemon does not possess final policy making authority by himself.  Rather, that authority rests with the entire thirteen-member Miami-Dade County Board of County Commissioners.  *See Matthews*, 294 F.3d at 1297 ("Because policymaking authority rests with the Commission as an entity, the County can be subject to liability *only if the Commission itself* acted with an unconstitutional motive.") (emphasis added); *see also* Miami-Dade County Home Rule Charter §§ 1.01(A), 2.02(A).

Thus, even if Commissioner Hardemon had the individual motive alleged in the Complaint, the Complaint is devoid of any allegations that the County or the Board of County Commissioners itself acted with any similar motive.  *See Matthews*, 294 F.3d at 1297 ("An unconstitutional motive on the part of one member of a three-member majority is insufficient to impute an unconstitutional motive to the Commission as a whole.").  Because the Complaint fails to allege that the Board of County Commissioners—the entity vested with the policymaking authority for the County—acted with any unconstitutional motive, the Complaint's *Monell* claims against the County (Counts II and V) fail as a matter of law and should be dismissed.  *See id.* at 1298 ("We conclude, therefore, that, because only Commissioner Reynolds was actually motivated by an unconstitutional consideration, the County cannot be held liable under Section 1983.").

### B.  The Complaint Fails to State a Procedural Due Process Claim Against the County (Count III)

The Complaint fails to state a Fourteenth Amendment procedural due process claim against the County. *See* Compl. ¶ 90.  To state a cognizable procedural due process claim, "Plaintiff must allege (i) the deprivation of a protected-property right; (ii) state action; and (iii) constitutionally inadequate process." *Beach Blitz Co.*, 2018 WL 11260453, at \*6.  The Complaint here fails to establish the elements of a due process claim because it lacks any allegations to support the deprivation of a protected-property right and a constitutionally inadequate process.

*First*, Plaintiff does not have a protected property right to obtain an "extension" of time to comply with the requirements of the Infill Program. *See* Compl. ¶ 86.  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).  Therefore, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Ely v. Mobile Hous. Bd.*, 605 F. App'x 846, 850 (11th Cir. 2015) (quoting *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005)).  Plaintiff here cannot establish "a legitimate claim of entitlement" to an additional extension of its already-thrice-extended deadline to comply with the requirements of the Infill Program because decisions to extend such deadlines are left to the legislative discretion of the Board of County Commissioners. *See* MIAMI-DADE COUNTY CODE § 17-124(c).  Indeed, as the Complaint acknowledges, all the previous extensions of time Plaintiff obtained were granted by the Board of County Commissioners. *See* Compl. ¶¶ 28, 36.  Even assuming, as Plaintiff conclusorily—and incorrectly—alleges, that Commissioner Hardemon had "sole control" over whether further extensions would be put for a vote before the full Board of County Commissioners, his decision, as an elected official, was purely discretionary. *Id.* ¶ 33.  There are no allegations in the Complaint suggesting otherwise.[7]  Because Plaintiff did not have an entitlement to receiving an extension of time or to having Commissioner Hardemon sponsor that

---

[7]  To the extent that Plaintiff claims that it was entitled to the extension of time based on the fact that it had received previous extensions of time in the past, that argument has been rejected by the Supreme Court. *See Conn. Bd. of Pardons v. Dumschat,* 452 U.S. 458, 465 (1981) ("A constitutional entitlement cannot 'be created—as if by estoppel—merely because a wholly and *expressly* discretionary state privilege has been granted generously in the past.'") (quoting *Leis v. Flynt,* 439 U.S. 438, 444 n.5 (1979)); *Bryan Media, Inc. v. City of St. Petersburg,* 293 F. App'x 717, 718 (11th Cir. 2008) (rejecting the proposition that "plaintiff's estoppel argument can give rise to a property interest").

request before the Board of County Commissioners, Plaintiff possessed no property interest to which due process could attach.  Therefore, Plaintiff's due process claim fails.  *See Ely*, 605 F. App'x at 850.

*Second*, the County did not provide Plaintiff with an inadequate process.  "A procedural due process violation does not exist unless and until the State fails to provide due process prior to or following the deprivation of a substantive right."  *Beach Blitz Co.*, 2018 WL 11260453, at *6 (cleaned up).  "In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise."  *Id.* The Complaint here does not contain a single allegation (including citing to any County rule, regulation, ordinance, or resolution) that the County failed to provide Plaintiff with adequate process.  Plaintiff claims that it "has no process to challenge this reversion," but, based on the allegations in the Complaint, Plaintiff has only received a Notice of Default.  Compl. ¶ 59. Critically, the Complaint does not allege that the County has reverted the deeds or declined to provide Plaintiff with a process to remedy the reversion.  On the contrary, the Complaint acknowledges that the County's Notice of Default allowed Plaintiff 30 days to cure any default. *See id.*  Yet, in all the time that has lapsed since the Notice of Default was issued, Plaintiff could have sought the support of any of the remaining twelve commissioner to sponsor its requested resolution, but the Complaint is devoid of any attempts by Plaintiff to do so.  *See Beach Blitz Co.*, 2018 WL 11260453, at *6 ("Plaintiff cannot rely on its failure to avail itself of available state remedies to claim that the state deprived Plaintiff of procedural due process."); *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) ("If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process.").  Therefore, Plaintiff's procedural due process claim against the County fails.

## CONCLUSION

Based on the foregoing, Plaintiff's Complaint should be dismissed.  Because all the allegations in the Complaint fall squarely within Commissioner Hardemon's legislative immunity, and Plaintiff has not alleged any separate wrongdoing by the County, any amendment of the Complaint would be futile.  As such, the Complaint should be dismissed *with prejudice*.  *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020) (affirming a district court's dismissal with prejudice when the underlying facts could not support a claim for relief).

Dated: August 6, 2025

Respectfully submitted,

**GERALDINE BONZON-KEENAN**
Miami-Dade County Attorney

By: */s/ Jose D. Vazquez and Michael B. Valdes*
**Jose D Vazquez**
Florida Bar No. 116269
**Michael B. Valdes**
Florida Bar. No. 93129

Miami-Dade County Attorney's Office
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Phone: (305) 375-5151
Fax: (305) 375-5634
Email: jose.vazquez6@miamidade.gov
Email: michael.valdes@miamidade.gov

*Counsel for Keon Hardemon and Miami-Dade County*